Garcia v. Bondi Garcia v. Bondi Good morning, honorable judges. If it may please the court, my name is Martin Hirschland and I have the privilege of representing Angelita Garcia, who's here with us today in the courtroom. I'm joined at council table by my colleague James Azadian and I would like to reserve five minutes for rebuttal. All right, watch your clock please. Yes ma'am. Your honors, life has not been fair to Ms. Garcia. She has suffered lifelong PTSD and depression brought on as a result of an attempted rape when she was a little girl and years of abuse at the hands of her ex-husband. Ms. Garcia had lived in the United States for over 30 years without so much as a until her landlord burst into her room, sprayed bleach in her eyes, and initiated the altercation which led to Ms. Garcia's placement in removal proceedings. And due to this court's recent en banc decision in US v. Gomez holding that a conviction under California Penal Code 245A1 is not a crime of violence, the underlying removal case against Ms. Garcia is now entirely unsupported since the government's basis for removal was predicated on a finding that her conviction constituted a crime of violence. Counsel, can you speak to the courts holding in Sessions v. DiMaia because there the court held that the categorical approach as we did it in Gomez really doesn't have anything to do with the categorical approach as it's used in immigration cases. I mean it says pretty squarely in that case that the analysis differs in immigration cases. So I guess tell me why Gomez is relevant here despite that holding. Because, Your Honor, I would reference the case of Suate Orellana v. Garland which was originally cited in connection with the exhaustion argument and actually supports our case on exhaustion. But going back to Your Honor's question, that case also held at page 630 that because significant legal developments had occurred since the BIA issued its original decision, remand is appropriate to allow the BIA to consider the impact of the new law. So we would ask the court, in addition to the basis for remand that we identified in our briefing, we have a new basis for remand as a result of this U.S. v. Gomez case that was recently decided en banc by this court. And during the merits hearing before the agency, the one place where Ms. Garcia should have been guaranteed fairness, the I.J. cut off Ms. Garcia's testimony and prevented Ms. Garcia's expert witness, Dr. Christmas, from testifying at all. With respect to due process, Your Honors, due process principles require that the I.J. be a neutral judge and that Ms. Garcia be afforded a full and fair hearing and an opportunity to present evidence on her behalf. The due process principles prohibit an I.J. from declining to hear relevant testimony because of a prejudgment about the probative value of that testimony. And that is exactly what happened here, Your Honors. The I.J. originally allowed Dr. Christmas to testify by telephone. There was a motion to allow Dr. Christmas to testify that was granted. The I.J. in his opening remarks at the merits hearing even referenced that him allowing Dr. Christmas to testify was a safeguard. But during the hearing itself, the I.J. abruptly reversed course and prevented Dr. Christmas from testifying at all. In addition to the I.J.'s prevention of Dr. Christmas's testimony, the I.J. then gave diminished weight to the report of Dr. Christmas based on a predetermination about the probative value of that report. The I.J. referenced that the reason he was giving diminished weight to Dr. Christmas's report was because of the fact that Dr. Christmas was not treating Ms. Garcia at the time of the incident and also the fact that a substantial length of time had passed between the incident and Dr. Christmas's evaluation. But these concerns were not known to Ms. Garcia, were not made known to Ms. Garcia during the hearing itself. These concerns were not addressed by Dr. Christmas in her written report because she could not have anticipated that the I.J. would have had those concerns. And Dr. Christmas was not allowed to address those concerns. She was not allowed to face cross-examination or examination by the I.J. where the I.J. could have addressed those points and was not allowed to have redirect examination where Ms. Garcia could have potentially, again, addressed those points with Dr. Christmas. And I would point this court to the cases of Zolotukin and Lupez-Umanzor, which we cited in our briefs. In Zolotukin, the I.J. refused to allow telephonic testimony of the petitioner's expert and said that there was a written submission by the expert and that was fine. But what this court held in Zolotukin was that the expert's testimony would have been probative as to whether the I.J.'s interpretation of the written materials was correct. And the denial of that expert testimony violated the petitioner's due process rights in that case. Again, also in Lupez-Umanzor, this court held that the I.J.'s prejudgment of testimony without allowing the oral testimony to address those concerns was a due process violation as well. Another due process violation in this case was the I.J.'s preventing of Ms. Garcia herself from testifying in the portion of the hearing relating to the particularly serious crime determination about anything other than the conviction itself. And this is directly contrary to the obligation as set forth in Gomez v. Sessions, which held that the I.J. is required to receive evidence and consider mental health treatment or mental health condition of the individual regardless of whether that was brought forth in the underlying criminal conviction or not. And the reason why the I.J. is required to consider that evidence is important. And that's because, as the Gomez-Sanchez case confirms, the thorough analysis of mental health is necessary due to the relevance of motivation and intent to the particularly serious crime determination. So the failure of the I.J. to allow Dr. Christmas to testify, the failure of the I.J. to allow Ms. Garcia to testify about anything other than the conviction itself was an error of law requiring remand under the PSC, particularly serious crime rules, as well as a due process violation because the testimony was not allowed to come in in the first instance. Turning briefly to the Convention Against Torture argument that was brought forth, we identified several issues of law with the Convention Against Torture analysis. The agency applied the wrong legal standard for acquiescence by focusing on color of law and ignoring willful blindness. The agency failed to aggregate the risks of torture, and the agency failed to consider all evidence relevant to the possibility of future torture. Let me provide the court with some concrete examples of that. The BIA said that it was not error for the I.J. to base his prediction that Ms. Garcia would not face future torture in Mexico because she had family support available in Mexico to assist her for obtaining necessary treatment for her mental health conditions. But Ms. Garcia herself testified before the I.J. that she did not believe that her family would be able to support her in receiving mental health conditions. And this merits hearing occurred eight years ago, Your Honors, and since then Ms. Garcia's parents in Mexico have unfortunately passed away, and her two siblings that were there are no longer there. So as it stands now, Ms. Garcia has no family in Mexico. Another factor that the BIA cited was Ms. Garcia had only recently received mental health treatment, had never been institutionalized in the past, but we know that's also not true because Ms. Garcia herself testified that she had seen a psychiatrist around 2007. Both Dr. Christmas and Ms. Garcia testified, Dr. Christmas in her written report, because Dr. Christmas was not allowed to testify at the hearing itself, that Ms. Garcia was taking medications for anti-anxiety. And also, Ms. Garcia testified that she had sought group therapy for battered women as a result of her being admitted to a shelter for women who had experienced domestic violence. So this record, dispositive and material record evidence was ignored by the agency, which would have directly borne on the issue of future torture. And Your Honors, I see that I'm approaching five minutes, so unless the panel has any further questions, I would like to reserve the balance of my time for rebuttal. Why don't you reserve your time? Thank you. Your Honor. Yes. Good morning, Your Honors. May it please the Court, my name is Justin Markell, and I represent the Attorney General in this case. In light of the late hour of the filing of the briefing on that issue, to the extent the Court wishes to address it, regarding the issues that were briefed in this case, we don't believe the agency abused its discretion in finding that Ms. Garcia's assault with a deadly weapon conviction constituted a particularly serious crime. The agency properly considered the nature of the conviction, the type of sentence imposed, and the circumstances underlining the conviction, including Ms. Garcia's mental health at the time of the crime, when ruling that Ms. Garcia's crime was a particularly serious crime. Further, contrary to Ms. Garcia's assertions, the immigration judge did not limit her ability to testify about her mental health at the time of her crime, her history of mental health treatment, or the medications that she was taking, uh, in the month around the time of her criminal act. Instead, the immigration judge simply asked Ms. Garcia's attorney not to question her about her experiences with her ex-husband, which she was having a very emotionally difficult time to talk about every time she was asked about it. And instead, the immigration judge allowed Petitioner's Counsel to continue to question her, and she did end up questioning her at length about, um, her mental health, how she felt at the time of the crime. She talked about the medication she was taking at the time of the crime. She, um, also talked about how long she had seen, uh, uh, counseling, meaning she testified that she started counseling in 2007, but she stopped going to counseling for the two years prior to the, uh, time of the conviction. And so at the time of the conviction, she was not seeing a psychiatrist or psychologist. Uh, she was, uh, apparently still receiving medication from her primary care doctor, uh, for anxiety and sleeping. Um, so the government firmly believes there was no limitation on her ability to fully present her case regarding, uh, her mental health at the time of the crime. Moreover, substantial evidence supports the agency's determination that Ms. Petitioner was a victim of a domestic violence case. The agency's claim of being institutionalized and tortured, the agency reasonably found there was no clear probability of her being institutionalized because she has never been institutionalized before. Uh, at the time of the hearing when the immigration judge adjudicated this case, she did have family in Mexico, and the court can't consider the fact that she no longer has family because the question before the court is whether or not the agency abused its discretion at the time or whether or not there was substantial evidence at the time the agency adjudicated, uh, the issue in this case. Right. Would her relief, would her relief be, um, for a motion to reopen based on the change? Yes, arguably to the extent that she believes those facts are determinative regarding her chances of being tortured in the future. Yes, the appropriate venue to file a motion to reopen without the senator, to send her back to Mexico without any support given that the IJ and the agency seem to have accepted that she does have mental health problems. Um, it seems to me that could be a basis for reopening. Uh, it would be a question for the immigration judge to, to determine in light of the new evidence that Petitioner would submit to the immigration judge, but at the time of this hearing, there's really very little indication. I agree with you. The circumstances have changed. Yes, Your Honor, I understand. Uh, on that point, though, too, not only was the evidence, uh, weak at the time of her trial, but she never contested that determination, um, in meaning the likelihood of being institutionalized. She didn't contest that to the board, and she didn't contest it before this court in any of her briefs. She now contested it at oral argument, but her briefs contested it. Um, on her behalf, who is working pro bono for her, so we now are having a higher quality of argument. Uh, I'm sorry, could you repeat the question, Your Honor? Oh, I'm just, it's not really a question. It's just a comment. She's now represented by a higher quality attorney. Well, she, she had an attorney the whole time, uh, throughout the removal proceedings. Realize that. Oh, okay. Um, I understand, Your Honor. Uh, regarding her fear of torture from the criminal who attacked her, uh, as a child over four years ago, uh, the agency also, uh, reasonably concluded that even assuming this individual would seek to harm Ms. Garcia in the future, there's, um, the evidence didn't show that the government would acquiesce because when this individual harmed people in the past, he was criminally prosecuted and jailed. And once again, the immigration judge, uh, once again, petitioner didn't challenge, uh, this finding before either the board or the immigration judge. I mean, I'm sorry, before the board or this court in their briefs. Um, if the court doesn't have any further questions, we're happy to rest on the briefs in this case, Your Honor. No. Okay. So thank you very much, counsel. Thank you, Your Honor. I appreciate it. I'd like to address a few points on rebuttal, Your Honors. The IJ, when he said to Ms. Garcia that she didn't need to testify any further regarding her, uh, fear of torture at the hands of her ex-husband, said that, uh, observed that she was becoming emotional recounting these past traumas, uh, and said that he would give her declaration and evidence in the record full weight. Uh, but the IJ nor the BIA, um, engaged in an analysis of the likelihood of potential torture from her ex-husband, despite the fact, and, uh, my friend on the other side argued that that has been waived, despite the fact that in her asylum application, which was part of the record, she expressed fear that her ex-husband's family would hurt her. That's at page 429. In her declaration to the IJ, uh, for the merits hearing itself, she spoke of that she was afraid of encountering her ex-husband and his family, and that's at page 864. Uh, during a hearing, uh, on December 6, 2016, before the agency, uh, she said that, uh, she discussed in great length her fear of her ex-husband and his family, and that's at pages 175 to 176 and 213 to 214 of the record. And in Ms. Garcia's brief to the Board of Immigration Appeals, she also discussed the of her ex-husband and his family, and that's at page 40. So the fear of torture from her ex-husband and his family is everywhere in the record, except in the pages of the IJ's decision and the BIA's decision. Uh, with respect to Dr. Christmas, another point I wanted to make on that is after the IJ expressed his skepticism about the probative value of Dr. Christmas's testimony at the October 2nd merits hearing, the IJ then reconvened for another hearing on October 5th without the party's presence to issue his decision. Had the IJ, you know, had concerns about Dr. Christmas and her testimony and the probative value of that testimony, he could have easily had the parties come back on that subsequent hearing date and address those concerns. He did not and issued the decision essentially in absentia of Dr. Christmas's testimony. With respect to the fact that Ms. Garcia had never been institutionalized in the United States, that's not the standard. What's required is that the agency consider all evidence relevant to the possibility of future torture. And what the record bears out in this case, Your Honors, is that when Ms. Garcia was here in the United States living freely, she had her daughters, she had her grandchildren who are now 6 and 11 who need her, she needs them. She, you know, was not experiencing a deterioration of her mental health. But when she was ripped away from her family and placed in detention, her mental health deteriorated rapidly. She, you know, was engaging in acts of self-harm. She wasn't getting the medication or treatment that she needed. And it's not unreasonable. In fact, it is highly probative to look at that and say, well, if she was ripped away from her family again and sent back to Mexico where she would not have any support system, that her mental health would deteriorate. Dr. Christmas in her report referenced the fact that she would come to the attention of authorities. She's also diabetic. That's in the report as well. She would not be able to get the insulin that she would need, might fall into a coma, diabetic coma. So we have a substantial body of dispositive record evidence that is extremely relevant to the Convention Against Torture claim, especially with regards to the possibility of future torture in Mexico that was ignored by the agency here. And one more point on the waiver argument and the non-exhaustion argument. What non-citizen need not raise a, quote, precise argument before the board in order to exhaust it. All that's required for a claim to be exhausted is that the board must have an opportunity to pass on the issue. And with that standard, because of the record evidence that put the board and the agency on notice of these challenges, and that's discussed further in our briefing, your honors, there was no waiver. There was no non-exhaustion here. And we respectfully request that this court remand back to the agency. And if this court has no further questions, I would rest my case there. Okay. Thank you, counsel. And thank you for taking on this matter pro bono. The court appreciates it. It's been my pleasure, your honor. And Garcia V. Bondi will be submitted.
judges: WARDLAW, BADE, THOMAS